UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL CASTRO, | : | |
|     Plaintiff, | : | CASE NO. 3:22-cv-152 (MPS) |
| | : | |
| v. | : | |
| | : | |
| FRANCESCO LUPIS, | : | |
|     Defendant. | : | NOVEMBER 22, 2023 |
| | : | |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**

The plaintiff, Daniel Castro, filed this action against Dr. Francesco Lupis asserting claims for deliberate indifference to serious medical needs in violation of the Eighth Amendment. Following initial review of the Second Amended Complaint, the Court permitted the case to proceed only on the claim regarding the plaintiff's hemorrhoid condition. *See* ECF Nos 12, 14. Dr. Lupis has filed a motion for summary judgment. The plaintiff was granted an extension of time, until October 13, 2023, to respond to the motion for summary judgment. He has not done so. For the following reasons, the defendant's motion is granted.

**II.    Standard**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). The Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in [his] favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010)

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**III.    Facts[1]**

---

[1] The facts are taken from the defendant's Local Rule 56(a)1 Statement and supporting exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation

In 2021, the plaintiff was confined at MacDougall-Walker Correctional Institution (MacDougall). Def.'s Local Rule 56(a)1 Statement, ECF No. 37-2, ¶ 2. Dr. Lupis was the plaintiff's primary care provider. *Id.* ¶ 3. In addition to providing care himself, Dr. Lupis was responsible for overseeing the medical care provided to the plaintiff by other medical staff. *Id.* ¶ 4. Dr. Lupis also was responsible for conducting chronic care visits with the plaintiff to ensure that his chronic illnesses were properly managed, referring the plaintiff to specialists when he required care that could not be provided in the facility, and coordinating the plaintiff's prescriptions and treatments. *Id.* ¶¶ 5-7.

On January 12, 2021, the plaintiff underwent a colonoscopy as follow-up care for a colon cancer diagnosis in 2019. *Id.* ¶ 8. During the colonoscopy, nonbleeding hemorrhoids were observed. *Id.* ¶ 9. The doctor who performed the colonoscopy did not recommend any treatment for the hemorrhoids. *Id.* ¶ 10. Nor did the plaintiff seek or receive treatment for hemorrhoids from the defendant or any other medical staff from January through June 2021. *Id.* ¶¶ 11-13, 16-18. The plaintiff met with Dr. Lupis for a chronic care follow-up appointment on March 19, 2021. *Id.* ¶ 14. The hemorrhoids were not identified as a current problem at this visit and the plaintiff received no treatment for hemorrhoids. *Id.* ¶ 15.

---

to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.
  Although the defendant informed the plaintiff of this requirement, *see* ECF No. 37-7, the plaintiff has not filed a Local Rule 56(a)2 Statement. Nor has he responded to the motion for summary judgment in any way. Accordingly, the defendants' statements that are not contradicted by admissible evidence in the record are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1, or in the Court imposing sanctions....").

On July 4, 2021, the plaintiff met with Nurse Ring for prompt care. *Id.* ¶ 19. He complained of painful, itchy, and sometimes bloody hemorrhoids and asked to meet with his provider. *Id.* Following protocol, Nurse Ring prescribed Preparation H hydrocortisone cream to alleviate skin irritation and hemorrhoidal suppositories to alleviate hemorrhoid inflammation. *Id.* ¶¶ 20-22.

On July 19, 2021, the plaintiff had another chronic care follow-up appointment with Dr. Lupis. *Id.* ¶ 23. The plaintiff complained about constipation and Dr. Lupis prescribed Colace and Miralax. He did not complain of hemorrhoids. *Id.* ¶ 24; ECF No. 38 at 320-24.

On July 29, 2021, the plaintiff submitted an inmate request addressed to Dr. Lupis in which he acknowledged receiving medication for hemorrhoids but stated that he had not received any medication for pain. *Id.* ¶ 27. The plaintiff asked to be "checked out" for his complaints of pain. *Id.* On August 2, 2021, a member of the medical staff responded to the request and instructed the plaintiff to purchase Tylenol from the commissary. *Id.* ¶ 28.

On August 8, 2021, the plaintiff saw Nurse Ring at prompt care and requested additional packets of Miralax for his constipation. *Id.* ¶ 29. Nurse Ring gave the plaintiff a few packets and reordered additional packets for the plaintiff from the pharmacy. *Id.* ¶ 30.

On August 16, 2021, the plaintiff saw nurses Mushi, Cummings, and Eze at sick call for complaints of rectal pain. *Id.* ¶ 31. The nurses observed that the plaintiff was experiencing what they thought was a hemorrhoidal protrusion but saw no redness. *Id.* ¶ 32. The nurses prescribed acetaminophen for hemorrhoidal pain and instructed the plaintiff to eat more fiber and drink water. The nurses also informed Dr. Lupis. *Id.* ¶ 33.

On August 18, 2021, the plaintiff saw Dr. Lupis at sick call and reported that he was experiencing pain on sitting and walking. *Id.* ¶ 34. Dr. Lupis prescribed Motrin and Tylenol to be taken daily for rectal pain. *Id.* ¶ 35. He also submitted a request for a surgical consult. *Id.* ¶ 36.

On August 24, 2021, the plaintiff saw a surgeon who diagnosed an anal fissure, not hemorrhoids. *Id.* ¶ 37. An anal fissure, which is a cut on the skin of the anus, frequently causes pain and discomfort but is not life threatening. *Id.* ¶¶ 38-39. An anal fissure can cause buildup of internal rectal scar tissue which, when pushed outside the anus, can mimic hemorrhoids, causing a common misdiagnosis. *Id.* ¶ 40. The surgeon recommended that the plaintiff try using Rectiv ointment, stool softener, and fiber supplements, increasing water intake, and taking two sitz baths per day before undergoing any surgery. *Id.* ¶ 41.

The surgeon recommended surgery only if the more conservative treatments failed because surgery has associated risks including incontinence. *Id.* ¶¶ 42-43. So that surgery would not be delayed if needed, the surgeon preemptively scheduled a surgical procedure about six weeks ahead. *Id.* ¶ 44. A delay of surgery to attempt conservative treatment does not worsen the condition or pose any danger to the health of the patient if, as was the case here, there was no rectal malignancy. *Id.* ¶¶ 45-47.

On August 27, 2021, the Department of Correction contacted the surgeon's office and secured a tentative surgery date of October 7, 2021. *Id.* ¶ 48. On August 30, 2021, Dr. Lupis prescribed the Rectiv ointment and authorized the plaintiff to receive two sitz bath treatments each day. *Id.* ¶¶ 49-51. The same day, Dr. Lupis contacted the surgeon and requested that the plaintiff receive immediate surgery because the conservative treatments provided thus far had

5

been unsuccessful. *Id.* ¶ 53. The surgeon disagreed and wanted the plaintiff to follow the conservative treatment he had prescribed for six weeks to see whether the fissure would heal without surgery. *Id.* ¶ 54.

On September 15, 2021, the plaintiff sent an inmate request to Dr. Lupis complaining of continuing pain when defecating and asking why the procedure was taking so long to be performed. *Id.* ¶ 56. A member of the medical staff answered the request on September 17, 2021, recommending that the plaintiff sign up for prompt care to be seen. *Id.* ¶ 57.

On September 23, 2021, the surgeon's office rescheduled the plaintiff's surgery for October 21, 2021. *Id.* ¶ 58. On October 1, 2021, Dr. Lupis renewed several prescriptions including ibuprofen and acetaminophen. *Id.* ¶ 59.

On October 14, 2021, the plaintiff met with Dr. Lupis for a chronic care follow-up appointment and a pre-operative examination. *Id.* ¶ 60. Dr. Lupis also continued the sitz bath treatments and scheduled a "pre-op work-up." *Id.* ¶ 61.

The surgeon cancelled the surgery on October 20, 2021 and rescheduled it for November 19, 2021. *Id.* ¶¶ 62, 64. The surgeon did not tell Dr. Lupis why the surgery had been cancelled. *Id.* ¶ 63. The surgeon does not recall why the plaintiff's surgery was rescheduled but does recall that he had a large number of rectal cancer patients, patients who took priority over patients without malignancies, in October 2021. *Id.* ¶ 65. The Department of Correction has no control over when surgeons at UConn Health schedule procedures. *Id.* ¶¶ 66-69.

On October 31, 2021, the plaintiff sent an inmate request to Dr. Lupis stating that he continued to experience pain and his condition was worsening. *Id.* ¶ 70. The plaintiff stated that his hemorrhoids were bleeding and asked why the surgery was delayed. *Id.* Before Dr. Lupis

responded, the plaintiff submitted a second request, on November 3, 2021, this time addressed to Christine. *Id.* ¶ 71. The plaintiff complained that his hemorrhoid pain was affecting his sleep and daily activities and asked when he would have the surgery. *Id.* ¶ 72.

On November 4, 2021, LPN Christine Baker submitted an order to prepare a patient notification form for the plaintiff's November 19, 2021 surgery. *Id.* ¶ 73. On November 8, 2021, she responded to the inmate request telling the plaintiff that the surgery had been rescheduled and that he would be called down for the pre-op very soon. *Id.* ¶ 74.

On November 11, 2021, the plaintiff submitted an inmate request to Dr. Lupis asking him to discontinue the ibuprofen and substitute another pain medication because the ibuprofen was bothering him but to continue the acetaminophen and renew that prescription. *Id.* ¶¶ 75-76. On November 16, 2021, Dr. Lupis responded to the October 31, 2021 and November 11, 2021 requests, informing the plaintiff that his surgery had been rescheduled and that he would order more Tylenol. *Id.* ¶¶ 77-78.

On November 19, 2021, the plaintiff underwent surgery, which successfully repaired the anal fissure. *Id.* ¶ 79. Following surgery, the plaintiff was discharged from the hospital and remained in the MacDougall infirmary until November 22, 2021. *Id.* ¶¶ 83-84. The plaintiff was medically cleared to return to work on November 29, 2021. *Id.* ¶ 85.

IV. **Discussion**

The defendant moves for summary judgment on the grounds that the plaintiff has failed to substantiate his Eighth Amendment claim and that he is protected by qualified immunity.

To establish an Eighth Amendment claim, the plaintiff must present evidence "showing the offending official's 'deliberate indifference to [his] serious medical needs.'" *Thomas v. Wolf,*

7

832 F. App'x 90, 92 (2d Cir. 2020) (quoting *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011)). There are two elements to a claim for deliberate indifference to medical needs. The first element is objective. The inmate must "show that he was 'actually deprived of adequate medical care' by an official's failure 'to take reasonable measures in response to a [sufficiently serious] medical condition.'" *Id.* (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (internal quotation marks omitted)). Establishing an objectively serious deprivation requires the court to make two separate inquiries. First, the court must determine whether the inmate "was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. Prison medical providers are required only to have "act[ed] reasonably." *Id.* The second inquiry requires the court to determine "whether the inadequacy in medical care is sufficiently serious, This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id*. at 280. Thus, although the objective element sometimes is referred to as the seriousness of the medical need, that is only one factor evaluated in determining the seriousness of the deprivation of medical care. *See id.*

If the claim is for denial of any treatment, the court will consider "whether the inmate's medical condition is sufficiently serious." *Id.* A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly

relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

If, however, the claim is for a delay in treatment, the court focuses on the challenged delay rather than merely on the underlying medical condition to determine whether the alleged deprivation is sufficiently serious. The court considers "the seriousness of the particular risk of harm that resulted from 'the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Bellotto v. County of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007) (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)).

The second element is subjective. The inmate must show "that the official acted with a culpable state of mind of 'subjective recklessness,' such that the official knew of and consciously disregarded 'an excessive risk to inmate health or safety.'" *Wolf,* 832 F. App'x at 92 (citations omitted). Negligence or medical malpractice does not rise to the level of an Eighth Amendment violation. *Id.* (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("mere negligence' is insufficient to state a claim for deliberate indifference). Thus, for a claim based on delay of treatment, the inmate must show that the defendant intentionally or recklessly delayed needed medical treatment. *See Stewart v. City of New York*, No. 15-CV-04335, 2018 WL 1633819, at *8 (S.D.N.Y. Mar. 31, 2018) (dismissing deliberate indifference claim where plaintiff did not allege that the defendant "acted intentionally to delay the provision of medical treatment in a way that subjected [the plaintiff] to

9

an excessive risk of harm"); *Bell v. Jendell*, 980 F. Supp. 2d 555, 562 (S.D.N.Y. 2013) (allegation of delay in provision of medical treatment without allegation that delay was intentional or reckless is insufficient to support Eighth Amendment deliberate indifference claim) (collecting cases).

Although hemorrhoids were noted on the plaintiff's January 2021 colonoscopy, the plaintiff's medical records show that he did not complain of pain or discomfort until July 2021.[2] At that time, he was provided medication for hemorrhoids. The plaintiff saw Dr. Lupis later in July 2021, but he complained about constipation, not hemorrhoids, on that occasion and Dr. Lupis responded by prescribing medication for constipation. Later in July, he submitted an inmate request addressed to Dr. Lupis, but the request was answered by another medical provider and the plaintiff submits no evidence that Dr. Lupis ever saw the request.

The medical records indicate that Dr. Lupis was first informed of the plaintiff's complaints of rectal pain by the nurses who saw the plaintiff on August 16, 2021. Dr. Lupis saw the plaintiff two days later, at which time he prescribed pain medication and submitted a request for a surgical consult. The plaintiff saw the surgeon and was diagnosed with an anal fissure on

---

[2] Although the plaintiff's verified complaint states that the plaintiff told the defendant at the March 19, 2021 visit that he was experiencing pain in his rectum, ECF No 1 at 10, and that the Defendant failed to follow up, *id.*, the medical records belie this statement. The record reflecting the plaintiff's March 19, 2021 visit with the defendant quote the plaintiff as stating: "I am having some heartburn. It causes some pain and reflux. I am good with my stool. I had my last colonoscopy and that went well." ECF No. 38 at 373. There is no suggestion that the plaintiff complained of rectal pain at this visit, and the note of the gastro-intestinal examination states, unremarkably: "Soft, non-tender. Bowl sounds present. No pulsatile mass or masses. No hepatosplenomegaly." *Id.* at 375. The record further notes that, "[T]he patient is stable." *Id.* "Multiple courts have declined at summary judgment to credit statements by a plaintiff that are flatly contradicted by contemporaneous medical records." *Chimney v. Quiros*, 2013 WL 2043290, at *3 (D. Conn. Feb. 16, 2023). Because there is no suggestion in the relevant medical record that the plaintiff complained to the defendant of rectal pain in March 2021, and because, as shown below, subsequent medical records show that the defendant consistently responded when the plaintiff complained of pain, no reasonable juror could credit the statement that he complained of rectal pain to the defendant on March 19, 2021.

August 24, 2021. Thus, as the record shows that the plaintiff's pain and discomfort were not caused by hemorrhoids, the plaintiff cannot state a cognizable deliberate indifference claim based on improper hemorrhoid treatment. However, as the plaintiff is proceeding *pro se*, the Court will consider his claim as applied to the anal fissure diagnosis.

The surgeon indicated that surgery would be warranted only if his recommendation of conservative treatment for six weeks was ineffective. Surgery was tentatively scheduled for October 21, 2021, in case the conservative measures did not work. On August 30, 2021, Dr. Lupis requested immediate surgery as, in his view, conservative treatment had not been effective to date, but the surgeon refused. The surgery was postponed for a month by the surgeon and was performed on November 19, 2021. In response to the plaintiff's complaints of pain, Dr. Lupis prescribed pain medication.

The plaintiff has submitted no evidence that Dr. Lupis had any control over the scheduling of the surgery. Indeed, Dr. Lupis has submitted evidence that scheduling was under the sole control of the surgeon. "Courts have ... refused to find deliberate indifference where delays in treatment were caused by circumstances that were outside the control of the charged officials. The logistical difficulties involved in scheduling outpatient appointments and transporting prisoners to outside facilities can present one such circumstance." *Madera v. Ezekwe*, No. 10 CV 4459(RJD)(LB), 2013 WL 6231799, at *12 (E.D.N.Y. Dec. 2, 2013); *see also Benjamin v. Pillai*, 794 F. App'x 8, 12-13 (2d Cir. 2019) (holding that, absent evidence that defendant had any control over scheduling of tests or deviated from ordinary standard of care in providing medical assistance, prisoner plaintiff cannot, as a matter of law, sustain deliberate indifference claim); *Hernandez v. Keane*, 341 F.3d 137, 146 (2d Cir. 2003) (no deliberate

indifference where "most of th[e] delay [in receiving surgery] was caused by factors outside defendants' control").

Upon learning of the plaintiff's condition, Dr. Lupis prescribed pain medication and arranged a surgical consult. The plaintiff has submitted no evidence showing that Dr. Lupis acted intentionally or recklessly with regard to scheduling his surgery or handling his complaints of pain. His allegations that Dr. Lupis ignored his complaints of pain, which are unsupported by the evidence of record, are insufficient to create an issue of fact in opposition to the motion for summary judgment. Accordingly summary judgment in Dr. Lupis' favor is warranted.

## V.     Conclusion

The defendant's motion for summary judgment [**ECF No. 37**] is **GRANTED**. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 22nd day of November 2023 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge